Case 3:24-cv-00026-NKM   Document 1   Filed 04/24/24   Page 1 of 11   Pageid#: 1

CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
4/24/2024
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
     DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| **HILLARY KNICELY PASCHALL**<br><br>    **Plaintiff,**<br><br>v.<br><br>**UNIVERSITY OF VIRGINIA SCHOOL OF MEDICINE \| COMMONWEALTH OF VIRGINIA**<br><br>    **Defendant,**<br><br>**Serve: Melina R. Kibbe, MD**<br>**Office of the Dean**<br>**McKim Hall 3009**<br>**1415 Jefferson Park Avenue**<br>**Charlottesville, Virginia 22903** | **Case No:** 3:24cv00026<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

The above-named Plaintiff, Hillary Knicely Paschall, by counsel, states as her Complaint against Defendant University of Virginia School of Medicine | Commonwealth of Virginia, the following:

### I. JURISDICTION AND VENUE

1. Ms. Paschall claims violations of the Rehabilitation Act of 1973 ("the Rehab Act"), 29 U.S.C. §§ 701, *et seq*. Claims pursuant to the Rehab Act are brought solely against Defendant, University of Virginia School of Medicine | Commonwealth of Virginia ("UVA Med"). *See generally* 28 U.S.C. § 1331; 28 U.S.C. § 1343(a)(4).

2. Ms. Paschall is domiciled in Fluvanna County, Virginia.

3. Defendant UVA Med is a public medical school operating in Charlottesville, Virginia. UVA Med is a division of a state agency of the Commonwealth of Virginia. UVA Med receives federal funding such that it avails itself to the Rehab Act pursuant to Section 504.

4. The acts and/or omissions of the Defendant from which the following causes of action arise, occurred within the City of Charlottesville, Virginia.

5. Venue is appropriate as the acts and/or omissions of Defendant from which the causes of action arise occurred within the Western District of Virginia. *See* 28 U.S.C. § 1391(b)(2).

## II. FACTS

6. At the time of the retaliation noted below, Ms. Paschall worked as a full-time Clinical Research Program Manager.

7. Ms. Paschall began working for UVA Med on or about September 26, 2022.

8. Ms. Paschall consistently met the legitimate expectations of her employer throughout the entirety of her employment.

9. Prior to issues arising regarding a disability or perceived disability, Ms. Paschall received written work performance reviews that indicated she was meeting expectations. At no time did UVA Med provide any disciplinary action to Ms. Paschall, nor was she placed upon a performance improvement plan during her employment.

10. On or about April 14, 2023, Ms. Paschall fell and severely injured herself at her home. Ms. Paschall badly injured her left ankle requiring immediate medical attention.

11. Ms. Paschall promptly informed her employer of the need for medical leave and treatment due to her injury.

12. At all times pertinent to this action, Ms. Paschall's injury was perceived as a disability by Defendant. The injury limited daily life activities, including walking, caring for herself, and

working, among others, and Ms. Paschall's employer and supervisors of UVA Med considered her to be disabled.

13. Ms. Paschall required and requested an accommodation of telework in April of 2023. It was not granted by her employer.

14. Ms. Paschall's injury required the use of crutches and a walking boot.

15. Not long after having notified UVA Med of her health condition and the need for an accommodation, Defendant began to ostracize Ms. Paschall.

16. Ms. Paschall began noticing that meetings in which she normally participated as part of the essential functions of her job began to be scheduled without her attendance.

17. Messages received by Ms. Paschall from individuals in the chain of command above her began to include hostile language.  For example, Dr. Sana Syed, MD, a supervisor to Ms. Paschall, often sent derogatory or hostile messages to Ms. Paschall after being notified of her health condition and need of accommodations.  Such messages include false criticisms, harsh tones, and statements such as, "I am seriously very annoyed by this whole thing".

18. Employees discussed work projects without involving Ms. Paschall despite the projects requiring her input.  This ostracization included a team dinner for employees on or around April 26, 2023.  Ms. Paschall was intentionally excluded from this dinner.

19. On or about April 26, 2023, Dr. Syed informed Ms. Paschall's co-workers that, because of the hard work that everyone was providing, they would receive raises.  Ms. Paschall was not included among the employees who were stated to receive raises despite her hard work of equal measure.

20. On or about May 1, 2023, Ms. Paschall experienced debilitating pain and required additional telework as an accommodation for her injury. Ms. Paschall informed her employer of

this requirement and began working from home due to the pain and immobility she experienced.

21. Without warning, on or about May 1, 2023, Dr. Syed informed Clinical Research Operations Manager Monika Thielen, who was an employee above Ms. Paschall in the chain of command ("Ms. Thielen"), via email that Ms. Paschall would be resigning from employment and asked that Ms. Thielen post a position for replacement. Ms. Paschall was stunned as she had no plans on resigning nor was she in a position to accept a clinical position with her current disability and in a walking boot. Dr. Syed sent Ms. Paschall an instant message to notify her of this directive to Ms. Thielen. As provided by Dr Syed to Ms. Paschall, "she's going to ask for an end date I think 6-8 weeks from [now] should be good, you can say you are exploring other options and give a firm date in a few weeks. That way she will be able to post the position."

22. On or about May 3, 2023, Ms. Paschall contacted supervisor Ms. Thielen and informed Ms. Thielen that she was experiencing discrimination and a hostile work environment ever since becoming disabled and requesting accommodations. Ms. Thielen referred Ms. Paschall to human resources.

23. Ms. Paschall voiced concerns in contacting human resources and informed Ms. Thielen of the discrimination and hostility within the environment affecting the workplace and, thus, Ms. Paschall discussed the unlawful work conditions with Dr. Syed. Ms. Paschall raised the denial of accommodations, the hostile work environment beginning after the onset of her disability, and the need for accommodations in the future.

24. On or about May 8, 2023, Ms. Paschall received a message from Dr. Syed indicating that she "was totally ok with [Ms. Paschall] moving on" and that "the injury is natural point to reset. . . . [p]lease keep me in the loop about what you want your next career decision to be and how I can support you. . . . [m]y understanding from all these conversations plus your recent injury is that

4

you are very unhappy with the position and do not wish to continue."

25. Ms. Paschall became reasonably concerned that she would be fired despite her intention not to leave her job.

26. On or about May 18, 2023, Dr. Syed requested that Ms. Paschall resign from employment by June 30, 2034.  When Ms. Paschall informed Dr. Syed that she had no intention of resigning, Dr. Syed stated that she "would hate to have create a paper trail for human resources."

27. Ms. Paschall was alarmed and asked Dr. Syed if she planned on providing false performance information to human resources.  Dr. Syed denied she would take such actions.

28. Ms. Paschall contacted supervisor Ms. Thielen again and informed her and human resources of the hostility and demands for her resignation.

29. On or about May 30, 2023, Ms. Paschall submitted a complaint form to human resources regarding the treatment she had received to date.  This included allegations of harassment and discrimination since providing notice of her disability and need for accommodations. On or about June 2, 2023, Ms. Paschall met with a representative from human resources and recounted all the issues she had experienced.

30. Despite Ms. Paschall's attempts to quell the hostility of her environment, it did not stop.

31. Ms. Paschall's job duties were restricted.

32. Ms. Paschall was directed not to have one-on-one contact with employees that she regularly communicated with as part of the essential functions of her job. For example, Ms. Paschall was forbidden to have one-on-one contact with employees that worked in the lab.  However, Ms. Paschall needed to communicate with these employees at frequent intervals to perform the essential functions of her job.  This was intentionally done to prevent Ms. Paschall from performing her necessary job duties.

33. Dr. Syed initiated an audit for the purpose of creating a paper trail to justify the termination of Ms. Paschall just as Dr. Syed had previously threatened.

34. On or about July 14, 2023, Ms. Paschall received what she considered a demotion. Ms. Paschall was assigned to another division and found the essential functions of her job to have entirely changed.  This new position - - which included the same level of pay - - was in a different division, had diminished supervisory authority, doubled her daily work load, and was viewed as a less desirable position with less chance of advancement.  This demotion essentially altered Ms. Paschall's entire career track.

35. Ms. Paschall continued to inform human resources of what was occurring, but nothing seemingly prevented the environment from worsening.

36. Defendant planned on terminating Ms. Paschall, but Ms. Paschall resigned - - a constructive discharge - - prior to the execution of this plan.

37. On or about **October 8, 2023**, prior to being terminated from employment, Ms. Paschall submitted the following to human resources:

> **Throughout this year I have had a difficult time at work. I reported issues this year that were of significant concern to me about my job. It seemed that things only became worse after I reported. I have enjoyed the relationships that I have made while working here, but I feel I can no longer provide day to day services. My current workload has nearly doubled. I find this overall intolerable, and I therefore must resign employment effective today.**

### COUNT I: CLAIM FOR DISCRIMINATION
### IN VIOLATION OF THE REHABILITATION ACT OF 1973

38. Ms. Paschall incorporates by reference herein the preceding paragraphs of this Complaint.

39. At all times relevant to the Complaint, Ms. Paschall was a qualified individual with a disability under the Rehabilitation Act or she was perceived as one by Defendant UVA Med.

40. At all times relevant to the Complaint, Ms. Paschall could perform the essential functions

of her job.

41. Prior to her termination, Ms. Paschall revealed her disability and asked for reasonable accommodations. Those accommodations were refused.

42. UVA Med had actual notice that Ms. Paschall may need future accommodations related to her disability.

43. UVA Med administered a plan in which Ms. Paschall's employment would ultimately be demoted and then terminated.

44. UVA Med would not have discriminated or retaliated against Ms. Paschall nor taken the other discriminatory actions against her but for Ms. Paschall's disability and/or the perception of her disability, and/or her request for reasonable accommodations, and/or anticipated additional accommodation needs, and/or her protected complaints of retaliation during the period of her accommodation/medical leave.

45. The reasons given for Ms. Paschall's treatment were pretextual in nature.

46. As a direct and proximate result of UVA Med's actions, Ms. Paschall has suffered and will continue to suffer pecuniary losses.

47. UVA Med acted at all times with malice or reckless indifference to the statutorily protected rights of Ms. Paschall.

48. UVA Med has violated Ms. Paschall's rights under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, oppressively, maliciously, fraudulently, or with reckless disregard for Ms. Paschall's rights.

49. At all times material hereto, UVA Med treated Ms. Paschall in a discriminatory manner in comparison with non-disabled employees.

50. At all times material hereto, UVA Med treated Ms. Paschall in a discriminatory manner in comparison with similarly-situated employees.

51. The above-described acts by UVA Med and employees of UVA Med constitute disability discrimination in violation of the Rehabilitation Act.

### COUNT II: CLAIM FOR RETALIATION
### IN VIOLATION OF THE REHABILITATION ACT OF 1973

52. Ms. Paschall incorporates by reference herein the preceding paragraphs of this Complaint.

53. At all times relevant to the Complaint, Ms. Paschall was a qualified individual with a disability under the Rehabilitation Act or she was perceived as one by Defendant UVA Med.

54. At all times relevant to the Complaint, Ms. Paschall could perform the essential functions of her job.

55. Prior to her termination, Ms. Paschall revealed her disability and asked for reasonable accommodations. Those accommodations were refused.

56. UVA Med had actual notice that Ms. Paschall may need future accommodations related to her disability.

57. UVA Med administered a plan in which Ms. Paschall's employment would ultimately be demoted and then terminated in retaliation for engaging in protected activities under the law.

58. UVA Med would not have discriminated or retaliated against Ms. Paschall nor taken the other discriminatory actions against her but for Ms. Paschall's disability and/or the perception of her disability, and/or her request for reasonable accommodations, and/or anticipated additional accommodation needs, and/or her protected complaints of retaliation during the period of her accommodation/medical leave.

59. The reasons given for Ms. Paschall's treatment were pretextual in nature.

60. As a direct and proximate result of UVA Med's actions, Ms. Paschall has suffered and will continue to suffer pecuniary losses.

61. UVA Med acted at all times with malice or reckless indifference to the statutorily protected rights of Ms. Paschall.

62. UVA Med has violated Ms. Paschall's rights under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, oppressively, maliciously, fraudulently, or with reckless disregard for Ms. Paschall's rights.

63. The above-described acts by UVA Med and employees of UVA Med constitute disability retaliation in violation of the Rehabilitation Act.

### COUNT III: CLAIM FOR FAILURE TO ACCOMMODATE IN VIOLATION OF THE REHABILITATION ACT OF 1973

64. Ms. Paschall incorporates by reference herein the preceding paragraphs of this Complaint.

65. At all times relevant to the Complaint, Ms. Paschall was a qualified individual with a disability under the Rehabilitation Act.

66. At all times relevant to the Complaint, Ms. Paschall could perform the essential functions of her job.

67. Prior to her termination, Ms. Paschall revealed her disability and asked for reasonable accommodations.

68. UVA Med had actual notice that Ms. Paschall may need future accommodations related to her disability.

69. UVA Med failed to accommodate Ms. Paschall by refusing to engage in an interactive process in order to ascertain accommodations.  UVA Med failed to provide any accommodations to Ms. Paschall despite notice and the duty to do so.

70. At all times Ms. Paschall's accommodation requests were reasonable under the law and would not have resulted in an undue hardship or burden on the part of UVA Med.

71. As a direct and proximate result of UVA Med's actions, Ms. Paschall has suffered and will continue to suffer pecuniary losses.

72. UVA Med acted at all times with malice or reckless indifference to the statutorily protected rights of Ms. Paschall.

73. UVA Med has violated Ms. Paschall's rights under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, oppressively, maliciously, fraudulently, or with reckless disregard for Ms. Paschall's rights.

74. The above-described acts by UVA Med and employees of UVA Med constitute failure to accommodate in violation of the Rehabilitation Act.

WHEREFORE, Plaintiff Hillary Knicely Paschall prays for judgment against Defendant University of Virginia School of Medicine | Commonwealth of Virginia, for lost wages and benefits, backpay, injunctive relief, equitable relief, front pay and benefits, compensatory damages, not including emotional distress harm, together with prejudgment interest, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

Trial by jury is demanded on all issues on which Ms. Paschall is entitled to a trial by jury, including any question concerning whether Ms. Paschall's claims must be submitted to arbitration.

Respectfully Submitted,

HILLARY KNICELY PASCHALL

By: /s/ Thomas E. Strelka

Thomas E. Strelka, Esq. (VSB # 75488)
L. Leigh Rhoads, Esq. (VSB # 73355)
STRELKA EMPLOYMENT LAW
4227 Colonial Avenue

                                          Roanoke, VA  24018
                                          Tel:  540-283-0802
                                          thomas@strelkalaw.com
                                          leigh@strelkalaw.com

                                          *Counsel for Plaintiff*

Thomas E. Strelka, Esq. (VSB # 75488)
L. Leigh Rhoads, Esq. (VSB # 73355)
STRELKA EMPLOYMENT LAW
Brittany M. Haddox, Esq. (VSB # 86416)
Monica L. Mroz, Esq. (VSB # 65766)
STRELKA EMPLOYMENT LAW
4227 Colonial Avenue
Roanoke, VA  24018
Tel:  540-283-0802
brittany@strelkalaw.com
monica@strelkalaw.com